GEORGE A. BENWELL and JOHN D. EVERITT, partners,

*v.*

THE MAYOR AND COUNCIL OF THE CITY OF NEWARK.

1. Coupon bonds issued by a city contained a provision that "this bond may be registered" on the books of the comptroller, at the option of the holder, after which the same should be transferred only by the endorsement of the comptroller on the bond. They also contained a clause providing for the semi-annual payment of interest "on the production and surrender of the interest coupons or warrants hereto annexed, or, if registered, on proper authority."—*Held,* that a holder was entitled, on demand, and a surrender of the coupons, to have his bond converted into a registered bond, the interest on which should be payable only to the registered holder, or on proper authority from him.

Benwell *v.* Newark.

2. The holder of the coupon bonds of a city, containing a provision which entitles him to have them converted at his option, into registered bonds, may enforce such contract by an action for specific performance; the duty to register the bonds being purely contractual, and not enforceable by *mandamus*, and the remedy by an action for damages being inadequate.

Final hearing on bill, answer and proofs.

This is a bill for the specific performance of a contract not relating to lands. It is found in a series of bonds known as the "funded debt city improvement bonds" issued by the defendants, dated March 15th, 1893, for $1,000 each, payable, with interest at four per cent. semi-annually, on the 15th of March, 1923—that is, thirty years from their date. By their terms they are made payable to bearer, and to each are annexed sixty interest coupons for $20 each, also payable to bearer. In their form they are what are known in the market as coupon bonds, or, rather, convertible coupon bonds. The complainants are the lawful holders, by purchase, of one hundred of them.

Each bond, after providing for the payment of the principal "on the surrender of this bond" on the 15th of March, 1923, contains this clause,

"with interest thereon at the rate of four per cent. per annum, payable semi-annually on the 15th days of March and September in each and every year, on the production and surrender of the interest coupons or warrants hereto annexed, or, if registered, on proper authority."

Then, after other recitals of no bearing upon the present question, follows this clause:

"This bond may be registered on the books of the comptroller at the city hall, in the city of Newark, at the option of the holder, after which the same shall be transferred only by the endorsement of such transfer by the comptroller on this bond."

It is for the specific performance of this last clause that the suit is brought, and the question involved is as to what is the true construction of it. The complainants contend that the holders of the several bonds under that clause are entitled thereby to

have them converted into regular "registered bonds," so that the interest will be payable to the registered holder thereof, either in cash or by check, and without the production of the coupons, and that the act of registration shall be so done and performed as that the holder will not thereafter be obliged to present the coupon in order to obtain the regular semi-annual payment of interest, and to that end they offer to surrender the coupons and demand to be relieved of any care or responsibility for them.

The defendants, on the other hand, decline to register the bonds in such manner as to be obligated thereafter to pay the interest directly to the registered holder, or in any other manner than by the mere production of the coupons (which they admit will remain negotiable) over the *counter* of the bank where they are made payable.

It is said that the law or practice of the defendants is that all payments of this sort out of the treasury must be made by a check signed by each of the several commissioners of the sinking fund, consisting of the mayor, comptroller and three gentlemen who give their services to the city without compensation, and that it would be imposing upon these three gentlemen too much labor to ask them to sign separate checks for the interest on each bond or set of bonds held by any individual.

*Mr. Cortlandt Parker, Jr.,* for the complainants.

*Mr. Frederick T. Johnson,* for the defendants.

PITNEY, V. C.

The question presented must be determined upon the true construction of the clauses of the bond above recited, viewed in the light of the meaning of the language among persons engaged in making, floating, negotiating and investing in such securities.

Several expert witnesses on this subject were sworn. They all agree substantially in declaring that securities of this kind in this country are grouped or classed as follows :

*First*—"Registered bonds."  A registered bond is one which is a simple certificate of indebtedness, in favor of a particular individual, payable at a day named, with interest at days named. The name of the payee is entered on the books of the corporation debtor—municipal or private—as the registered owner, or, if it be a government bond, on the register of the government. On the days when, by the terms of the bond or certificate of indebtedness, the interest falls due, it is paid directly to the registered creditor, without presentation of the bond, usually by check drawn to his order and sent by mail, or, if he so demands, by cash in hand, but by long-settled course of practice the payment is made by check to the order of the creditor.

These bonds or certificates of indebtedness are not negotiable, and can be transferred only by an entry on the books of the debtor corporation, with a proper endorsement on the bond itself, or by the issue of a new certificate if it be a government indebtedness.  The peculiar value of this class of securities lies in the fact that it is not necessary to produce them to the debtor at each time that the interest is due, and the danger of loss by robbery or fire is entirely removed.  As they are usually made to run for a long term of years, so that, as in the present instance, the amount of interest in the aggregate is really greater than the principal, this peculiarity is of great importance.

*Second*—"Coupon bonds."  These are made payable to bearer and are provided with interest warrants called coupons, for each installment of interest, also payable to bearer, which, when actually detached, are negotiable and payable to bearer.  The result is that a security of this class is passed easily from hand to hand—is convenient for use among bankers and moneyed institutions that desire a security which is easily, readily and quickly convertible into money by sale, the title to which may be passed from hand to hand without any formality except the mere tradition of the paper.  This ease of transfer gives this class of securities its peculiar value.  The collection of the interest is made by simply detaching the coupon and presenting it at the place of payment, either directly or through the usual course of bank exchanges, where it is paid without inquiry as to the ownership

of the bond from which it has been cut. The disadvantage of this sort of security is the danger of its loss by theft or fire.

These distinguishing characteristics make the registered bond more valuable to persons who desire a permanent investment and wish to eliminate the danger of loss by robbery or fire, such as large savings institutions and the like, while, as before observed, coupon bonds are more valuable for such as desire something easily negotiable from day to day.

A *third* class of bonds has its origin as follows: Parties desiring to borrow large sums of money naturally attempt to put their securities in such shape as to attract all classes of investors, and to that end have devised a third class of bonds, known as "convertible coupon bonds"—that is, coupon bonds which may, at the option of the holder, be converted into registered bonds. And this option is expressed in a clause contained in the bond itself, and when inserted produces a convertible coupon bond. The usual process of converting a coupon to a registered bond is to present the bond, cut off and surrender the coupons to the debtor, have the name of the creditor entered on a proper book kept by the debtor and a proper endorsement made upon the bond itself, showing its registration, thus reducing it, as nearly as possible, to the form and shape of an original registered bond.

The complainants claim that the bond here in question belongs to this third class.

Ordinarily, as everybody knows, a bond which has once been converted from a coupon bond into a registered bond, cannot be reconverted into a coupon bond without the issuance of a new bond. This results from the fact that the ordinary registered bond does not include coupons for the payment of interest, and to convert a registered bond into a coupon bond would require the issuing of a set of coupons for each bond.

The desire, however, to have a bond which may be converted and reconverted at the pleasure of the holder, has given rise to a half-way process, producing a mongrel bond (a *fourth* class), known as a "registered coupon bond," which is registered as to the principal or body of the bond, but not as to the interest.

The coupons remain negotiable and are collected precisely as if the principal had never been registered. They are payable to whoever presents them for payment, and no questions are asked as to whether the person presenting them is the registered owner and holder of the bond itself or not. The advantage of this fourth class is that, after having once been registered, the bonds may be reconverted into pure coupon bonds by an assignment on the back payable to bearer, and having them so marked on the register of the debtor.

It will be observed that it is necessary to keep the coupons alive in order to give them this capacity of being reconverted into coupon bonds. Such bonds have been issued, in a few instances, by railroads, but very rarely, so far as the evidence shows, by municipalities, and never by either the general government or any state government.

It is to be observed that this matter of conversion and recon-version is always, so far as appears, made optional with the holder.

Then there is, as claimed, a *fifth* class, which, however, as far as I understand the evidence, can hardly be called a class, in which the coupons are registered as well as the bond itself, but are not detached, so that the coupon becomes simply a convenient mode by which the holder of the bond, by means of a power of attorney or other written order, may collect his money.

I do not think the evidence warrants me in treating these last as a distinct class, and a consideration of their peculiarities renders it quite certain that they have not heretofore, and will not, probably, come into any general use, for the reason that once the coupons are registered, and so marked on their face, they never can be restored to their original negotiable character.

The question is whether, by the language of the clauses quoted from the bonds here in question, the complainants, as holders of them, are entitled to have them converted into pure registered bonds and be relieved of the duty and responsibility of presenting the coupons at each time that they desire to collect their interest. As before remarked, that must, I think, depend upon the language of the contract. Now it says:

"This bond may be registered on the books of the comptroller at the city hall, in the city of Newark, at the option of the holder, after which the same shall be transferred only by the endorsement of such transfer by the comptroller on this bond."

The complainants contend, and I think with great force, that the force of that language is that the bond shall be converted into what is known in the market as a registered bond, with all its peculiarities. That to register the bond in such a manner as to leave the coupons outstanding as negotiable instruments, payable to bearer, and compel the holder thereafter to preserve and present them as often as he needs his interest, would not convert the security into a completely-registered bond, but would amount to a partial registration only, which would make it no more than a registered coupon bond, the registration of which would extend to the principal only, leaving the interest which is secured by the terms of the bond itself and amounts in the aggregate to more than the principal, wholly unregistered in ownership and unsecured against loss by fire or theft. In other words, the argument is that the interest grows out of and follows the principal; that the promise to pay both principal and interest, as found in the instrument, is a single promise, and the interest warrants are merely mercantile machines invented to facilitate the payment of the interest, and as such are mere repetitions of the promise contained in the body of the instrument, and are essentially a part of and included in the descriptive word "bond." Hence, a promise to register the bond cannot be satisfied except by the registry of it as a promise to pay interest as well as principal.

The city, on the other hand, contends that the language is satisfied by simply registering the bond itself, leaving the clause that the interest can be paid only upon presentation of the coupons standing in full force, and that in the absence of any language indicating that the coupons are to be surrendered and the holder of the bond relieved of all responsibility for their safe keeping, they cannot be included in the term "registered." And counsel points to instances shown in evidence of convertible coupon bonds which contain express provision for surrendering

Benwell *v.* Newark.

the coupons upon the registry of the bonds, and relies upon the absence of that language in the bond here in question.

But the complainants, in answer to that argument, point, and I think with force, to the previous clause showing how the bond and the interest are to be paid, which is that the interest is to be paid on the surrender of this bond on the day of maturity,

"with interest thereon at the rate of four per cent. per annum, payable semi-annually, * * * on the production and surrender of the interest coupons or warrants hereto annexed, or, if registered, on proper authority."

The argument of counsel for complainants is that the words "or, if registered, on proper authority" apply especially to the interest, and not at all to the principal, but if they do apply to the principal, then they certainly do also apply to the interest as well; that they follow immediately after the promise to pay the interest, and, by the ordinary rules of construction, relate to the nearest antecedent and must be so applied; that they evidently provide a substitutionary mode of payment by dispensing with the production of something which, by reason of the registry, cannot be supplied, and that "something" can refer only to the interest coupon, and not to the body of the bond whose surrender is not a necessary part of the process of registration.

The contention on the part of the city is that these words "on proper authority" apply only to the principal, and not to the interest coupons. It was not suggested that they were used merely to provide for the case of the loss of the bond. The words now under consideration have never been used in any bond, except a portion of those issued by the city of Newark, and have not, so far as appears, either been passed upon judicially or acquired, by usage, any settled signification.

I think that the complainants have the better argument on that language. In fact, I think that the better opinion is that the words just quoted—"or, if registered, on proper authority"—apply to the payment of the interest, and to that only. They are to be read as follows: "or, if the bond be registered, the interest to be paid on proper authority." This, I think, is the

common-sense view of this writing. Consider the result of
adopting the other view. The interest on one of these bonds
amounts to $1,200—$200 more than the principal—and becomes
due, on the average, in fifteen years from date, which is just half the
time within which the principal becomes due. Hence, the present
value of the interest is more than twice that of the principal. A
construction which would hold that a registration of the princi-
pal only was contemplated, leaving the interest wholly unpro-
tected, should not be adopted except upon very clear language.
And I think that if the case rested alone upon the clause above
recited, which expressly provides for the registration of the bond,
and the other language—"or, if registered, on proper authority"
—had not been used, that the construction contended for by
the complainants should obtain to the extent, at least, that the
coupons shall be rendered non-negotiable and the interest be
payable to the registered holder.

It is to be observed that the court is not called upon, and it
is not necessary, for present purposes, to construe the words
"upon proper authority." They do not constitute a part of the
contract to be performed, which is contained entirely in the
clause which provides for the registration of the bonds. The
words just quoted are found in a previous separate clause, and
are appealed to simply to show that the registration provided
for in the clause in question included interest as well as princi-
pal, and contemplated the destruction of the negotiability of the
coupons as well as of the bond itself. Hence, it is not necessary
to express any opinion as to what shall be deemed "proper
authority" in the further dealing with these bonds after they
shall have been registered.

It was urged by the counsel of defendants that, at best, the
clause to be construed is so obscure, and the result so far from
clear—in fact so doubtful—that it should not be specifically
performed.

But I do not find myself entertaining any serious doubts.
And in this connection it is to be observed that this language
was devised and inserted by the city's officials. It is wholly
their handiwork, and I think this clearly a case for the appli-

cation of the maxim that "the words of an instrument shall be taken most strongly against the party employing them." *Broom Leg. Max.* *594, 597, 598. It would have been quite easy for the draftsman of this bond to have expressed himself in language that could not have misled any proposed purchaser, and I think it was the duty of the city to see that such language was used. If it had intended to present to the public a bond which could only be registered as to less than one-third of its value, leaving the other two-thirds negotiable and subject to loss by fire or theft, then I think it was the duty of the city to see to it that that was clearly expressed in the bond. I further think that any person desiring to invest in this sort of security was perfectly justified in construing the language herein used as an obligation on the part of the city to convert its coupon bond into a fully-registered bond.

During the argument I, of my own motion, raised the question as to the jurisdiction of this court, and suggested that perhaps the complainants' remedy was at law, either by *mandamus* or by action for damages. The defendants, however, distinctly waived any objection on that ground, and asked the court to decide the questions presented by the record, and agreed to submit to the judgment of the court, whatever it might be, subject to appeal, of course. Subsequent reflection, however, on that topic, leads me to the conclusion that the case is within the jurisdiction of this court.

With regard to the remedy by *mandamus:* The relations between the parties are purely contractual. The defendants are ordinary debtors, owing money by contract, and in that regard stand upon the same footing as an ordinary trading corporation. The contractual nature of these obligations is not altered by the municipal character of the defendants, and the duties imposed upon them by the bonds held by the complainants are in no sense public duties. The obligations were entered into, indeed, by virtue of legislative enactments, but they were merely enabling acts, giving the municipal authorities power to enter into the contracts in question. The relations between the parties being, therefore, contractual merely, for reasons given in the

case of *Bradbury* v. *Mutual Reserve Fund Association, 8 Dick. Ch. Rep. 306*, I am of the opinion that *mandamus* will not lie.

With regard to an action for damages for non-performance of the contract, that would not be an adequate remedy. In the first place, the matter of the ascertainment of the damages is so uncertain as to give the complainants no adequate remedy, and in the next place, they are entitled to the remedy of specific performance because they are entitled to have the exact thing that the defendants agreed to give them. It would be inequitable to leave them to their remedy in damages.

I will advise a decree in accordance with the foregoing views, the precise terms to be settled on notice unless the parties are able to agree.